BROWN, Judge,
dissenting.
[23] I respectfully dissent from the majority’s conclusion that the ICPC does not apply to an out-of-state placement with a natural parent in all circumstances. In Bester v. Lake Cnty. Office of Family & Children, the Indiana Supreme Court observed that whether the ICPC applies to the interstate reunification of children with natural parents is an open question and that some jurisdictions have concluded the ICPC applies under those circumstances and others have concluded it does not. 839 N.E.2d 143, 146 n. 2 (Ind.2005) (referring to cases holding the ICPC does apply and does not apply to reunification of children with natural parents). The majority here concludes that, based on its language, the ICPC does not apply to placements with out-of-state parents. Op. at 603-04. I do not agree that this is always the case based on the language of the ICPC.
[24] The purpose of the ICPC is to facilitate cooperation between participating states in the placement and monitoring of dependent children. See Ind.Code § 31-28-4-1, art. I. The majority cites to Article III of the ICPC, related to conditions for placement, and focuses on the language which refers to the transfer of a child “for placement in foster care or as a preliminary to a possible adoption,” which does not refer to the situation where a child is being sent to live with his or her natural parent. See Ind.Code § 31-28-4-1, art. III. However, this language is not disposi-tive. Article VIII of the ICPC expressly sets forth the limitations of the ICPC’s applicability, and this section does not preclude its application to agency placements with non-resident parents. See Ind.Code § 31-28-4-1, art'. VIII.[4] Moreover, Article X provides that the provisions of the ICPC “shall be liberally construed to effectuate the [ICPC’s] purposes.” Ind.Code § 31-28-4-1, art. X. See Dep’t of Children & Families v. Benway, 745 So.2d 437, 438-439 (Fla.Ct.App.1999) (observing that the purpose of the ICPC is to facilitate cooperation between participating states in the placement and monitoring of dependent children, that, although Article III references placement in foster care or as a preliminary to a possible adoption, Article VIII does not preclude its application to placements with non-resident parents, and that Article X provides the ICPC shall be liberally construed, and holding that the ICPC covers the out-of-state placement of a child with a natural parent).
[25] Having established that the ICPC by its terms does not preclude its application to out-of-state placement with natural parents, the question becomes when the ICPC is applicable. On one hand, application of the ICPC may not make sense where there is no evidence that the out-of-state parent may be unfit to care for the child, or a public child welfare agency has *608 not requested information from the ICPC office in the state of the out-of-state parent. On the other hand, application of the ICPC does make sense where evidence before the court suggests the out-of-state parent may be unfit to care for the child, the court has sought evidence regarding the parent’s fitness to care for the child, and a public child welfare agency has submitted a request to the ICPC office in the other state related to the placement. Indeed, the Association of Administrators of the Interstate .Compact on the Placement of Children (the “AAICPC”) has recommended such an approach in determining when the ICPC is applicable. AAICPC Regulation No. 3 provides in part:
A placement with a parent from whom the child was not removed: When the court places the child with a parent from whom the child was not,removed, and the court has no evidence that the parent is unfit, does not seek any evidence from the receiving state that the parent is either fit or unfit, and the court relinquishes jurisdiction over the child immediately upon placement with the parent. Receiving state shall have no responsibility for supervision or monitoring for the court having made the placement.
AAICPC Regulation No. 3 (found at http:// www.aphsa.org/content/AAICPC/en/ICPC Regulations.html) (last visited Aug. 20, 2015) (Emphasis added). Additionally, the AAICPC states the following:
Question:
[] When does the ICPC govern the placement of a child with the child’s parent or parents and when does it not govern this type of placement?
Answer:
The ICPC does not apply when a non-delinquent child who is under the jurisdiction of a court is placed out-of-state with her or his parent when the following conditions exist:
The court does not have any evidence that the parent is unfit to care for the child
The court does not seek any evidence with regard to the parent’s fitness to care for the child
At the time of placement a request to place the child with the parent has not been submitted to the ICPC office in the other state
The ICPC office in the state where the parent lives has not previously denied a request to place the child with the parent
The court terminates its jurisdiction over the.child at the time of the placement
The ICPC also does not apply when a child who is not a ward of the court or in the. custody of a public child welfare agency goes to live with- a parent in another state.
The ICPC does apply when a court or public child welfare agency seeks to place a child with a parent located out-of-state if the court or agency has evidence that the parent may not be fit to care for the child or if the court- or agency seeks an evaluation of the parent’s fitness. The ICPC applies to any placement with a parent if and when it is known that the child will remain a ward of the court or will remain in the custody óf a public child welfare agency after going to live with the parent.
AAICPC FAQ (found at http://www.aphsa. org/content/AÁICPC/en/résources/ ICPCFAQ.html) (last visited Aug. 20, 2015) (Emphases added).
[26] The facts here are that DCS began the process set forth by the ICPC for Father and at the time of the factfinding hearing, that process had not been completed, including a home study and background checks on Father. Additionally, Father had little contact with Child, did not provide regular child support, lived *609 with his girlfriend in an apartment but was not on the lease, did not have a plan for daycare, had worked for his current employer for approximately six months, and was essentially a stranger to Child. The juvenile court’s findings of these facts support its conclusion that “[a]bsent the results of the ICPC or background checks and a home study, [Child’s] safety with Father cannot be determined.” Child was placed with her godmother in Indiana, with whom she was bonded. Under the guidelines set forth by the AAICPC, these facts support application of the ICPC. See Arizona Dep’t of Econ. Sec. v. Leonardo, 200 Ariz. 74, 22 P.3d 513, 518-520 (Ariz.Ct.App.2001) (noting that the majority of jurisdictions that have found the ICPC applicable to out-of-state placement of a child with a non-custodial parent and concluding that, based on Regulation No. 3, when the sending agency is a child protective services agency acting through the state, and the child is placed with a parent or other family member who does, not have full custodial rights to or guardianship of the child, the ICPC applies to that out-of-state placement. The case notes, further that “this is not to say that the parent may be presumed to be unfit; rather, he or she must be investigated to ensure that the child would be safe if placed with that parent,” and that, without the ICPC, a child agency “would lack the legal authority to arrange for services in another state and it would be patently impractical ... to require an [agency], caseworker to travel to another state to investigate the propriety of a placement” and “[t]he ICPC best safeguards a child’s welfare by requiring the receiving state to investigate and monitor the placement”); see also Benway, 745 So.2d at 439 (noting that, “[o]nce a court has legal custody of a child, it would be negligent to relinquish that child to an out-of-state parent without some indication that the parent is able to care for the child appropriately” and “[t]he ICPC provides an effective mechanism for gleaning that evidence and for maintaining a- watchful eye over the placement”).
[27] For the reasons above, I conclude that the ICPC applies to placement with Father under these circumstances and thus that it was proper for the juvenile court to consider and in part rely upon the fact that the ICPC process had not yet been completed in making its. determination.
[28] The facts noted herein, together with the evidence regarding Child’s age and bond with her godmother and grandmother and lack of bond with Father, support the juvenile court’s conclusion. To suddenly send Child, whose Mother had been murdered by her sibling’s father two months earlier, to Minnesota with Father who has not participated in her life would be traumatic and could only cause Child greater harm. I agree with the juvenile court that any transition to Father needs to be gradual to ensure that Father has established a bond with Child and Child is in a safe environment.
[29] For the foregoing reasons, I would affirm the decision of the juvenile court.

. Article VIII, titled "Limitations,” provides in part:
This compact shall not apply to:
(a) The sending or bringing of a child into a receiving state by a parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or a guardian and leaving the child with any such relative or nonagency guardian in the receiving state....
Ind.Code § 31 — 28—4—1 (emphasis added). Notably missing from the statute is any reference to a sending agency.